Stewart *v.* Noble.

---

STEWART, ADM., &c. *v.* NOBLE.

On 29th June, 1841, J. S. executed a title-bond to R. N., conditioned that he should forward a good title to certain lands on his arrival in Pennsylvania. J. S. died in August, 1841, without making the conveyance required by the bond. N. M. became administrator of the estate of J. S., *ex officio*, as public administrator, on the 16th Nov., 1842, and subsequently H. S. *et al* were substituted. N. M., as administrator, was sued on the covenants of the bond on 22d Nov., 1842. *Held*, that no action could be maintained against the administrator at the time suit was brought.

J. S. having died before breach of covenant in the bond, the proper course for R. N. was to file a bill under the statute for a specific performance.

As a measure of damages, in an action on a title-bond, it is proper to follow the value of the land described in the covenant, and that value to be determined by the consideration money and interest.

ERROR *to Des Moines District Court.*

*J. C. Hall,* for the plaintiff in error.    1. The court below erred in sustaining the demurrer to the pleas.    They show that there was no breach before the death of Stewart.    The question is, are the administrators liable for a breach that occurred after the death of Stewart ?    If so, what constitutes a breach of that covenant by the administrators ?    The only breach they could make would be to refuse a deed after the

plaintiffs had applied to the district court, and obtained an order empowering them to convey under the statute then in force. Statute of 1839, 50, § 132; *ibid.* 455, § 44; Toller on Executors, 158, 163, 432; 4 *Bacon's Abt.*, 156—164; 2 Tomlin's Law Dic., 80.

2. As to rule of damages, see *Shepherd* v. *Hampton*, 6 Wheaton, 109; *Douglas* v. *McAlister*, 3 Cranch, 298; *Blydenburgh* v. *Welch*, 1 Bald. 331; *Gilpin* v. *Consequa*, Peters, C. C., 85; *Toyton* v. *Reed*, 4 Paige, 561: *West* v. *Beach*, 3 Cowen, 82; 4 Am. Com. Law, 77.

*C. Walker*, for the defendant. Neither of the pleas separately present a bar to the action. As to the plea of *non infregit*, it is bad to an affirmative covenant, and when the breach is specially alleged, as in this case.

The plea that he died before the convenants broken is bad, because the act of God does not discharge it. 4 Am. Com. Law, 30; 3 Burrow, 1637.

As to covenant sued on, plaintiff had his election to sue either administrator or heirs; the former, whether named or not, and the latter, because expressly named. 1 Toller on Executors, 458, 459, 462; 2 Wash., 155.

As to plea, that law in relation to administration of estates being part of contract, and that Noble was bound to apply to the court, and get an order to authorize the administrators and heirs to convey; it is not a plea of *puis darrein continuance* and bad; because happening after the action was brought, and is an attempt to obtain specific execution of a contract at law. And it is bad, because the law only gives Noble the privilege of making such application, and was a cumulative remedy, so that he had his election:

1st, To sue in equity for a specific execution.

2d, To apply to the court for an order to authorize the administrator to make him a deed.

3d, To sue on the covenant either the administrators, or heirs.

As to instructions, court below decided correctly, that the

consideration money with interest was the measure of damages.

By analogy to covenants of seizen, of warranty, of good title, and other real covenants, when the measure is the same and the principle the same :—

1. That the decision of the supreme court of the United States was made by analogy to personal chattels, to which it is not to be likened, as chattels are more fluctuating in the market, and not the subject of specific execution.

2. The supreme court slided into the conclusion by analogy, and not upon examination of the stream of authority from the fountain.

3. The authorities of the state courts generally establish the doctrine, that the measure of damages is the consideration money and interest. *Blackwell* v. *Board of Justices of Lawrence County*; 2 Blackf., 147; *Staats* v. *Ten Eyck*, 3 Cain, 111; *Pitcher* v. *Livingston*, 4 John., 1; 4 *Dallas*, 436; 2 Bibb, 273; *Nelson* v. *Matthews*, 2 Hen. & Mun., 164; 2 Mass., 433; *Bickford* v. *Page*, *id.* 455

But the defendant was not in a posture, being out of court, to take exception to instructions. 1 Scam., 213; 1 Tidd's Prac., 521, 523.

As to the consideration expressed in the covenant being conclusive, see *Schermerhorn* v. *Vanderheyden*, 1 John., 139; *Maigley* v. *Hauer*, 7, *id.*, 341.

*Opinion by* WILSON, J. This was an action of covenant instituted by Richard Noble against the administrators of John Stewart, in the district court of Des Moines county, at the February term, 1843. The declaration sets out that John Stewart had, on the 29th of June, 1841, covenanted with Richard Noble by deed, &c. The bond is in the usual form, in the penal sum of three thousand dollars, concluding—" The conditions of the above obligations are such, that whereas Richard Noble has this day made a warranty deed of conveyance to a tract of land to the said John Stewart, valued at eighteen hundred dollars, and now if the said John Stewart shall, as

soon as he may arrive at Fayette county, state of Pennsylvania, forward to the said Richard Noble, or his heirs, or his assigns, a good and complete warranty deed of conveyance to the northeast quarter of section number two, in township seventy-three, and the east half of the southeast quarter of section two, in township seventy-three, all north of range six, west, containing two hundred and sixteen acres, and forty-eight hundredths, (a reasonable time for said purpose being granted,) together with relinquishment of dower, then this obligation to be null and void, otherwise to be and remain in force."

" In testimony whereof, I have this 29th day of June, 1841, set my hand and seal.

JOHN STEWART."    [L. S.]

Averment that Stewart did arrive in Fayette county, Pennsylvania, and that he had not kept his covenant, &c.

Norton Munger was the first administrator of Stewart, against whom suit was originally instituted. He suggested at the February term, 1845, that he was no longer administrator; that on the 28th of June, 1845, he resigned and was discharged from farther administering on the estate, and that the present plaintiff in error had been appointed administrator on the 15th of February, 1845, by the probate judge of Henry county, on letters regularly granted in Pennsylvania, &c.

On the motion of Munger to substitute the plaintiff in error, it was ordered by the court that the motion be overruled.

Munger, administrator, then pleaded; that the plaintiff, Noble, ought not farther to maintain his action against him as administrator of John Stewart, because he became administrator of said estate, by virtue of his office as public administrator of the county of Henry, on the 16th of November, 1842; that on the 27th of December, 1842, Hadassa Stewart, (widow of said John,) William Stewart, and Samuel Phillips, filed in the office of the probate judge of said county, letters of administration, granted to them in the county of Fayette, Penn., which said letters were duly recorded by the judge of probate,

of Henry county. That on the 28th of January, 1845, and after the case was decided in the supreme court, and long after the time for which he was elected public administrator had expired, and long after he had ceased to act as public administrator; and the law creating said office had been repealed, he voluntarily appeared before the said probate court, to wit: on the 28th of June, 1845, and resigned; and that the said Hadassa Stewart, William Stewart, and Samuel Phillips were appointed administrators, &c., and that he was not bound by the law of the land farther to defend said suit.

A second special plea in abatement was filed, embracing the facts and statements in the first as a reason for not pleading to the plaintiff's declaration, concluding with a motion that the plaintiff be ruled to suggest upon the record the revocation of the letters to Munger, and the appointment of the plaintiff in error.

The plaintiff moved to strike these pleas from the file, which motion was overruled.

The defendant, Munger, also filed pleas in bar.

1. The general issue, *non est factum.*

2. That at the time of the commencement of this suit, said Stewart was dead, and that said plaintiff was only entitled to have a conveyance under the statute in such case provided.

3. That the plaintiff had never filed his bill for a specific performance, and that Stewart died without committing any breach, &c.

4. That no conveyance was made in accordance with the conditions of said bond before the decease of Stewart, and that after his decease, letters of administration were granted to Hadassa Stewart *et al.* which were recorded in Henry county, and that said administrators had on the 22d of July, 1843, filed in the district court of Henry county, a bill for specific performance of the contract of decedent, which was then pending, &c.

To which pleas the plaintiff filed a general demurrer, which was overruled, and the pleas sustained. And on motion, the plaintiffs in error were made parties defendant below, as

Stewart v. Noble.

administrators of John Stewart, deceased, vice Norton Munger, resigned.

The new defendants then *pleaded.*

1. *Non est factum.*

2. That decedent, in his lifetime, did not break the said supposed covenants.

3. *Actio non,* That before the time arrived for the performance of the supposed covenants, the said Stewart deceased.

4. That John Stewart, in his lifetime, did execute and deliver to said plaintiff said covenant; yet, before a reasonable time had elapsed after he returned to Pennsylvania, to make the deed in the covenant mentioned, the said Stewart died.

5. That the administrators had filed a petition for specific performance, and been authorized to execute the deed to plaintiff, Noble, and that the same was executed and tendered.

The plaintiff replied to the first, and demurred to the second, third, fourth, and fifth pleas, which demurrers were sustained. The third plea, on leave, was amended, which was again demurred to, and sustained. The plea of *non est factum* was withdrawn, and the cause submitted to a jury at December term, 1845, to assess the damages, which were assessed accordingly at $2277,25; and judgment awarded.

On the trial the plaintiff offered in evidence the covenant set out in the declaration. No proof of the signature of John Stewart was given, but the counsel of plaintiff handed it to the defendant's counsel, saying, it was offered in evidence. The defendant's counsel handed it back, saying, " go on." No other evidence was given to the jury.

The court instructed the jury that the value of the land described in the covenant to be ascertained by the consideration money, and interest thereon, was the measure of damages, and that the bond read in evidence was conclusive that the consideration money was eighteen hundred dollars.

To reverse the judgment the defendants below have brought the cause here upon a writ of error.

1. It is considered by the court, that no action could be maintained against the administrator at the time suit was brought.

Stewart *v.* Noble.

Suit was brought 22d November, 1842. Munger appointed administrator, 16th November, 1842. Stewart died, August 27th, 1841. See Statute of 1839, "Wills and Testaments," section 93. The plea setting forth that objection was good.

2. Stuart died before breach, and a proper course for Noble was to file a bill, under the statute, for a specific performance.

3. The decision of the court below on the subject of the rule of damages is affirmed.

Judgment reversed.